# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

LUIS SARCENO, *et al.*,

          Plaintiffs,

          v.

KWAN S. CHOI, *et al.*,

          Defendants.

Civil Action No. 13-1271 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The five plaintiffs in this action, Luis Sarceno, Rudy Godoy, Miguel Angel Iraheta, Omar Vaszuez, and Eber Estrada Flores (collectively, "the plaintiffs"), filed suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the District of Columbia Minimum Wage Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*, seeking "damages and other relief because Defendants failed to pay [the plaintiffs] minimum wages and/or overtime wages."  Compl. ¶ 1, ECF No. 1.  They allege that they worked for the defendants, Kwan S. Choi, Hwan P. Eun ("Eun"), Byung Choi, and Pyoung R. Choi (collectively, "the defendants"), performing "general labor tasks" at the defendants' supermarket, Best Way Supermarket, *see id.* ¶¶ 29, 32, 39, 46, 53, 60, regularly working more than forty hours a week, without overtime pay, *see id.* ¶¶ 33, 36, 40, 43, 47, 50, 54, 57, 61, 64.  Defendants Byung Choi and Pyoung Choi filed a Motion to Dismiss for failure to state a claim, ECF No. 15, and Defendants Kwan Choi and Eun filed a Partial Motion for Summary Judgment, ECF No. 17.  Both motions seek to enforce agreements executed by the plaintiffs purporting to resolve the FLSA claims asserted in this lawsuit.  *See* Defs. Byung Choi and Pyoung Choi's Mem. Supp. Mot. Dismiss ("Defs. Byung Choi and Pyoung Choi's MTD Mem.") at 2, ECF No. 15-1 ("[T]his Court need only look to the Settlement

1

Agreement signed by Plaintiffs Sarceno, Godoy, Iraheta and Vasquez to resolve this dispute.");
*id.* at 2–3 ("In said Settlement Agreement . . . four of the Plaintiffs waived any claim to any and
all wage and overtime payments from October 31, 2007 to October 20, 2011 . . . and fully
released the Defendants of any and all liabilities, including claims arising from or related to
alleged violations of the [FLSA] and or [sic] the [DCMWA].");  Defs. Kwan Choi and Eun's
Mem. Supp. Defs.' Mot. Part. Summ. J. ("Defs. Kwan Choi and Eun's PMSJ Mem.") at 2, ECF
No. 17-1 ("On October 20 and 21, 2011, the Plaintiffs and E & C Foods executed separate
Settlement Agreements and Releases . . . resolving all claims that the Plaintiffs had for alleged
unpaid wages . . . . As such, summary judgment should be entered in favor of Mr. Choi and Mr.
Eun and against the Plaintiffs as to all of the Plaintiffs' claims for unpaid wages that existed as of
the dates of the Settlement Agreements.").  Defendants Byung Choi and Pyoung Choi also seek
to dismiss the Complaint because, according to these defendants, "Plaintiffs Sarceno, Godoy and
Iraheta were paid in compliance with both the FLSA and the District of Columbia Minimum
Wage Act," and because "the Complaint fail[s] to allege with any specificity that Plaintiffs
Flores and Vasquez worked for All Seasons Food Corp. [the defendants' corporation], or the
Defendants."  Defs. Byung Choi and Pyoung Choi's MTD Mem. at 4–5.  The defendants'
motions were denied at the motions hearing held August 6, 2014, and this Memorandum Opinion
explains in detail the bases for that ruling.

## I.    BACKGROUND

The events at issue in this matter are related to an earlier suit filed in this District by the
plaintiffs' co-workers against defendants Kwan Choi, Byung Choi, and Pyoung Choi, in *Munoz
v. E&C Foods, Inc.*, Civil Action No. 11-1416 ("the *Munoz* suit").  The circumstances of the
*Munoz* suit are briefly reviewed to provide context for instant dispute.

## A.     The *Munoz* Suit

Defendants Byung Choi and Pyoung Choi operated the Best Way Supermarket located at 3178 Mount Pleasant St. NW, in Washington, D.C. until 2007, when ownership shifted to Defendants Kwan Choi and Eun.  Parties' Joint Statement of Undisputed Material Facts ("SMF") ¶¶ 2, 8, ECF No. 18.  On August 4, 2011, three of the present plaintiffs' co-workers filed the *Munoz* suit against three of the defendants named in the instant suit, as well as E&C Foods, Inc., which is the corporation through which defendants Eun and Kwan Choi operated the supermarket.  *See* Compl. ("*Munoz* Compl.") at 1–2, No. 11-1416, ECF No. 1.[1]  The *Munoz* suit was a proposed collective action alleging FLSA and DCMWA claims similar to those alleged in this instant matter.  *Compare Munoz* Compl. at 2 (seeking "back pay in the form of wages and/or overtime wages for labor and services rendered on Defendants' behalf"), *with* Compl. ¶ 1 ("seeking damages and other relief because Defendants failed to pay [the plaintiffs] minimum wages and/or overtime wages").  The *Munoz* suit was resolved on December 7, 2011, upon approval by this Court of two settlement decrees, one between the *Munoz* plaintiffs and the current defendants Byung Choi and Pyoung Choi, and the other between the *Munoz* plaintiffs and the current defendant Kwan Choi and his company, E&C Foods.  *See* Compl. ¶ 98; Order at 1, No. 11-1416, ECF No. 19 (granting Pls. Byung Choi, and Pyoung Choi's Joint Mot. for Entry of Consent Decree ("Choi Decree"), ECF No. 18, and Pls. Kwan Choi and E&C Foods Inc.'s Joint Mot. for Entry of Consent Decree ("E&C Decree"), ECF No. 17).  The present plaintiffs were not parties to that lawsuit.  Compl. ¶ 100; SMF ¶ 9.

The three employees who brought the *Munoz* suit included Lavaro Hernandez, who was employed as a "stocker."  *See Munoz* Compl. ¶¶ 5–6.  The plaintiffs in the instant action

---

[1] Kwan S. Choi is also known as "Charlie Choi," and Byung Choi is also known as "Daniel B. Choi," which are the name used in the *Munoz* suit.  Although Defendant Eun was not named as a party to the *Munoz* suit, the complaint in that included an unnamed, John Doe defendant.  *See* SMF ¶ 8; *Munoz* Compl. at 2.

"performed general labor tasks" for the defendants, Compl. ¶¶ 32, 39, 46, 53, 60, which the

plaintiffs assert makes them "'similarly situated' to Mr. Hernandez, and had the Munoz lawsuit

continued, these Plaintiffs would likely have been able to opt-in to that lawsuit," Pls.' Omnibus

Mem. Opp'n Defs. Byung Choi and Pyoung Choi's Mot. Dismiss and Defs. Kwan Choi and

Hwan Eun's Mot. Partial Summ. J. ("Pls.' Opp'n") at 4, ECF No. 20. Hernandez, the "stocker"

plaintiff in the *Munoz* suit, was paid a total of $47,131 pursuant to the consent decrees. *See* E&C

Decree at 4 (stating Lazaro Hernandez was to be paid $32,607); Choi Decree at 3 (stating Lazaro

Hernandez was to be paid $14,524); Pls.' Opp'n at 4.

### B. The Settlement Agreements

Shortly before the settlement decrees were approved in the *Munoz* suit, the plaintiffs each

executed a "Settlement Agreement and Release" on October 20 or 21, 2011, with "E&C Foods,

Inc., a District of Columbia Corporation, and its successors, assigns, if any, agents, and

attorneys." SMF Ex. A ("Settlement Agreement and Release," Oct. 20, 2011, signed by Plaintiff

Sarceno ("Sarceno Agreement")) at 1, ECF No. 18-1; Ex. B ("Settlement Agreement and

Release," Oct. 20, 2011, signed by Plaintiff Vasquez ("Vasquez Agreement")) at 1, ECF No. 18-

2; Ex. C ("Settlement Agreement and Release," Oct. 20, 2011, signed by Plaintiff Godoy

("Godoy Agreement")) at 1, ECF No. 18-3; Ex. D ("Settlement Agreement and Release," Oct.

21, 2011, signed by Plaintiff Flores ("Flores Agreement")) at 1, ECF No. 18-4; Ex. E

("Settlement Agreement and Release," Oct. 20, 2011, signed by Plaintiff Iraheta ("Iraheta

Agreement")) at 1, ECF No. 18-5 (collectively, the "Settlement Agreements"). The Settlement

Agreements are identical except for the name of the plaintiff employee signing the agreement

and the number of hours claimed to have been worked by, and settlement compensation paid to,

that employee. *See generally id.* Defendants Byung Choi and Pyoung Choi are not parties to the

Settlement Agreements.  *See id.* at 1 (naming E&C Foods and each plaintiff individually as only parties to Settlement Agreements).

Each Settlement Agreement covered the period from October 31, 2007 to the date of the Agreement, *see, e.g.*, Sarceno Agreement at 1, and provides that: (1) E&C Foods "did not maintain records to demonstrate the number of hours worked by each Plaintiff," SMF ¶ 27; (2) a bona fide dispute exists "between the parties with respect to the total overtime hours worked and the claims of the Plaintiffs," *id.* ¶ 28; and (3) "[e]ach Plaintiff was paid, in full, all amounts due and owing pursuant to the terms of the Settlement Agreement and Releases," SMF ¶ 33.

Three additional provisions in each agreement are notable for purposes of the defendants' instant motions.  First, each agreement included a "Release of E&C" stating, in pertinent part, that:

> Upon final receipt by Employee of the Settlement Payment, Employee, . . . does thereafter release, remise, acquit and forever discharge E&C and its respective officers, shareholders, agents, attorneys, employees and any other persons or entities acting on its behalf, from any and all claims, causes of action, actions, damages, contracts, debts, complaints, suits, judgments, agreements or claims of any kind or nature arising out of, or in any way related to, or any claims raised or that could have been raised with respect to overtime or other wages claimed by Employee pursuant to its employment by E&C, including any claims arising from or related to alleged violations of the Fair Labor Standards Act of 29 U.S.C. § 201, *et seq.* and/or the District of Columbia Minimum Wage Act of D.C. Code § 32-1001 *et seq.*, whether those claims and damages are known, unknown, foreseen or unforeseen, or may arise in the future.  It is the intent of the parties that the releases and waivers provided for under this paragraph shall become effective immediately upon receipt by Employee of the Settlement Payment, and without further action by any party hereto.  Sarceno Agreement at 2–3.

Underlying the pending motion for partial summary judgment by Defendants Eun and Kwan Choi is their assertion that as "shareholders" or "officers" in E&C Foods, Inc., this release bars any claims against them.  *See* Defs. Kwan Choi and Eun's PMSJ Mem. at 2.

Second, each Settlement Agreement contained a "Waiver of Claims" that states, in pertinent part, that:

> In addition to the releases . . . and upon receipt by Employee of the Settlement Payment as provided for herein, Employee hereafter waives and forever relinquishes any and all rights or claims related to unpaid wages claimed to be owed by E&C to Employee through the date of this Agreement, including, but not limited to, claims arising from or related to alleged violations of the Fair Labor Standards Act of 29 U.S.C. § 201 *et seq.* and/or the District of Columbia Minimum Wage Act of D.C. Code § 32-1001 *et seq.* Sarceno Agreement at 3.

Finally, each Settlement Agreement contained a "Confidentiality and Non Disclosure" provision, written entirely in capital letters, barring the parties from discussing the terms of the Settlement Agreements "to the maximum extent permitted by law," *see, e.g.*, Sarceno Agreement at 3; SMF ¶ 32. The agreements stated, in pertinent part, that "the fact of this agreement and the payment hereunder shall, to the maximum extent permitted by law, remain confidential and shall not be disclosed to anyone by the parties hereto, nor by their attorneys, agents or representatives, from the date of execution of this agreement forward." Sarceno Agreement at 3.

The parties do not dispute the following facts surrounding the execution of these agreements: (1) each of the plaintiffs "appeared at an office located at 7015 Evergreen Court, Suite 200 in Annandale, Virginia," on October 20 or 21, 2011 , SMF. ¶¶ 15–16; (2) this office location was the law firm of Megan Chung, Esq., who represented the defendants at the time, *id.* ¶¶ 24–25; (3) each plaintiff signed a "Settlement Agreement and Release in English and Spanish," copies of which have been provided to the Court, *id.* ¶¶ 17–21;[2] (4) Ms. Chung was present at the October 20 and 21 meetings, but the plaintiffs did not have an attorney present, *id.* ¶¶ 25–26; (5) the Settlement Agreements were not approved by a District Court, *id.* ¶ 31; and (6) the Settlement Agreements were executed when no administrative proceeding was pending with the Department of Labor or the District of Columbia's Office of Wage and Hour, *id.* ¶¶ 29–30.

---

[2] Contrary to the SMF, the Spanish versions of each Settlement Agreement provided to the Court are *not* signed by any of the parties, and the space for the address to which any notices relating to the Settlement Agreements was to be sent is blank in the Spanish version, but completed with the address of each individual plaintiff in the English version. *See* Sarceno Agreement at 5, 12–13; Vasquez Agreement at 5, 12–13; Godoy Agreement at 6, 14–15; Flores Agreement at 6, 13–14; Iraheta Agreement at 5, 12–13 (the preceding page numbers refer to the ECF page number, not the document page number, since the Spanish and English versions have duplicate page numbers).

The parties dispute certain circumstances surrounding the plaintiffs' execution of the Settlement Agreements. The plaintiffs allege that they were told by Defendant Kwan Choi to meet at a nearby 7-11 store so they could go to Virginia because the defendants "had money for [them], but that [they] had to go to Virginia to get paid." Pls.' Opp'n Ex. 2 (Affidavit of Pl. Luis Sarceno ("Sarceno Aff.")) ¶¶ 7–8, ECF No. 20-2. The plaintiffs aver that they were instructed not to tell the three employees then involved in the *Munoz* suit "about the meeting and about getting paid." *Id.* ¶ 8. The plaintiffs (except for Plaintiff Flores, who had a similar experience the next day, *see* Pls.' Opp'n Ex. 6 (Affidavit of Pl. Eber Flores ("Flores Aff.")) ¶ 8, ECF No. 20-6), and three co-worker cashiers were driven to Virginia in two cars, one driven by Defendant Eun and one driven by Plaintiff Godoy. *Id.* ¶ 9–10. When they arrived at the aforementioned law office in Virginia, the plaintiffs state they were ushered into a conference room where a woman introduced herself as Defendant Kwan Choi and Eun's lawyer and another woman indicated she would translate, since the plaintiffs "have a limited understanding of spoken English [and] cannot read English." *See id.* ¶¶ 2, 11.

The plaintiffs aver that they were given English and Spanish versions of the Settlement Agreements but were never advised to consult an attorney "prior to signing the document." *Id.* ¶ 12–13. Through the translator, the plaintiffs allege that Defendant Kwan Choi "warned [them] that if [they] spoke with anybody about the Settlement Agreement and Release, 'You will have problems.'" *Id.* ¶ 15. The plaintiffs maintain that Defendant Kwan Choi instructed them to tell anyone who asked about overtime wages, such as an attorney, that "everything was fine" and not to tell the three *Munoz* plaintiffs, whose proposed collective action suit was still pending, about the Settlement Agreements. *Id.* ¶¶ 16–17.

After they signed the documents, the plaintiffs assert that each plaintiff was immediately presented with a check—Sarceno received a check for $8,508.93—and was told he could cash the check at the Supermarket. *Id.* ¶¶ 18–19. The plaintiffs aver that, as salaried employees, before the Virginia meeting they did not know they were entitled to overtime. *Id.* ¶ 20. Before signing the Settlement Agreements, the plaintiffs allege that they were not represented by counsel, had not asserted a claim for unpaid wages, filed a lawsuit, or filed a complaint with the appropriate labor authorities. *Id.* ¶¶ 21–26. The other plaintiffs filed affidavits that are substantially identical to Sarceno's. *See generally* Pls.' Opp'n Exs. 3, 4, 5, (Affidavits of Pls. Godoy, Iraheta, and Vasquez, respectively), ECF Nos. 20-3, 20-4, 20-5; Flores Aff.

The defendants assert that the plaintiffs "voluntarily signed the Settlement Agreements and they were not denied the opportunity to consult with an attorney prior to signing the Settlement Agreements." Defs. Kwan Choi and Eun's Mot. Part. Summ. J. ("Defs.' PMSJ") Ex. 1 (Affidavit of Def. Kwan S. Choi ("1st Kwan Choi Aff.")) ¶ 13, ECF No. 17-2. Defendant Kwan Choi states that he "entered into discussions" with the plaintiffs in "October of 2011 . . . regarding the resolution of any claims that those individuals had for unpaid overtime compensation." *Id.* ¶ 7. He denies that he tried to keep the meeting secret by arranging for the plaintiffs to meet him at the 7-11 store away from the supermarket, where they were employed, and avers that he merely offered to carpool with the plaintiffs to the lawyer's office in Virginia "[d]uring the course of the [settlement] discussions." Defs. Kwan Choi and Eun's Reply Pls.' Opp'n Defs.' PMSJ ("Defs. Kwan Choi and Eun's PMSJ Reply") Ex. 1 (2d Affidavit of Def. Kwan S. Choi ("2d Kwan Choi Aff.")) ¶ 3, ECF No. 21-1. He further states that he did not "force, coerce or threaten" the plaintiffs regarding the Settlement Agreements. *Id.* ¶ 4.

Defendant Kwan Choi and Eun's former attorney, Megan Chung, filed an affidavit with the defendants' reply controverting certain aspects of the plaintiffs' recollection of what occurred at the Virginia meeting. Ms. Chung states that she (1) prepared the Settlement Agreements, Defs. Kwan Choi and Eun's PMSJ Reply Ex. 2 (Affidavit of Megan Chung, Esq. ("Chung Aff.")), ¶8, ECF No. 21-2; (2) discussed the then-active *Munoz* suit with the plaintiffs during the meetings on October 20 and 21, 2011, *id.* ¶¶ 13, 19; (3) advised the plaintiffs that they could consult with an attorney, *id.* ¶¶14, 20; (4) advised the plaintiffs that she did not represent them and represented their employer, E&C Foods, *id.* ¶¶ 16, 22; (5) and told them that they did not have to sign the Settlement Agreements "if [they] did not wish to do so," *id.* ¶¶ 16, 22.

Defendants Kwan Choi and Eun contend that the Settlement Agreements should be enforced to bar the plaintiffs' instant claims and the other two defendants, Pyoung Choi and Byung Choi, contend the plaintiffs' claims should be dismissed as meritless.

## II.    LEGAL STANDARD

### A.    Converting A Motion To Dismiss To A Motion For Summary Judgment

Defendants Pyoung Choi and Byung Choi have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal of the plaintiffs' claims against them. *See* Defs. Pyoung Choi and Byung Choi's Mot. Dismiss at 1, ECF No. 15. The Federal Rules of Civil Procedure provide that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment," and if a motion is so converted, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). Defendants Pyoung Choi and Byung Choi submitted three exhibits, consisting primarily of copies of payroll records, in support of their motion. *See generally* Defs. Pyoung Choi and Byung Choi's Mot. Dismiss Exs. 1–3, ECF Nos. 15-2, 15-3, 15-4. These

exhibits were not attached, referenced, or otherwise included in the Complaint, *see generally* Compl., and thus constitute "matters outside the pleadings" for the purposes of Rule 12(d).

The D.C. Circuit reviews a district court's decision to convert a motion to dismiss into a summary judgment motion for an abuse of discretion. *Colbert v. Potter*, 471 F.3d 158, 164–65 (D.C. Cir. 2006); *Flynn v. Tiede–Zoeller, Inc.,* 412 F. Supp. 2d 46, 50 (D.D.C. 2006) ("The decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court."). In using this discretion, "the reviewing court must assure itself that summary judgment treatment would be fair to both parties." *Tele–Commc'ns of Key W., Inc. v. United States,* 757 F.2d 1330, 1334 (D.C. Cir. 1985).

In light of the substantial extra-pleading evidence submitted with and underlying the motion to dismiss, and with the consent of the parties, *see* Pl.'s Opp'n at 10 n.5, the Court will treat Defendants Pyoung Choi and Byung Choi's motion to dismiss as a motion for summary judgment.[3]

### B. Motion For Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is properly granted against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Id.* at 323.

---

[3] At the August 6, 2014 motions hearing and in their memoranda, Defendants Pyoung Choi and Byung Choi's counsel confirmed that they had no objection to converting the pending motion to dismiss to a motion for summary judgment. *See* Hr'g Tr. 3:10-20, Aug. 6, 2014.

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in favor of the nonmoving party and shall accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby, Inc*. ("*Liberty Lobby*"), 477 U.S. 242, 255 (1986). The Court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider "other materials in the record." FED. R. CIV. P. 56(c)(3). For a factual dispute to be "genuine," the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [its] position," *Liberty Lobby*, 477 U.S. at 252, and cannot rely on "mere allegations" or conclusory statements, *see Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006); *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993); *accord* FED. R. CIV. P. 56(e). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See, e.g.*, FED. R. CIV. P. 56(c)(1); *Equal Rights Ctr. v. Post Props.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011) (noting that at summary judgment stage, plaintiff "can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment motion will be taken to be true.'" (quoting *Sierra Club v. EPA*, 292 F.3d 895, 898–99 (D.C. Cir. 2002) (ellipsis and second alteration in original))). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

## III.    DISCUSSION

Defendants Byung Choi and Pyoung Choi moved to dismiss the plaintiffs' claims against them as without merit, which motion, as noted, has been converted to a motion for summary judgment. Similarly, Defendants Kwan Choi and Eun moved for partial summary judgment solely based on the Settlement Agreements, which Defendants Kwan Choi and Eun argue bar the

instant suit against them.  Finally, the plaintiffs seek, as part of their opposition to Defendants Kwan Choi and Eun's motion, to have the Settlement Agreements declared unenforceable, based on the undisputed facts in the record.  Pls.' Opp'n at 9 ("[T]he Court should, as a matter of law, hold that these 'settlement agreements' are not valid for purposes of waiving Plaintiffs' rights under the FLSA.").

At the hearing on these motions held August 6, 2014, the Court the Court held that the presence of disputed material facts precluded the grant of both pending defense motions, Hr'g Tr. 33:11-15, Aug. 6, 2014, and held that, based on the undisputed facts in the record, "the[] Settlement Agreements are unenforceable," *id.* at 35:6-7.  These rulings are explained in more detail below.

### A.    Disputed Material Facts Preclude Entry Of Summary Judgment For Defendants Byung Choi and Pyoung Choi

Defendants Byung Choi and Pyoung Choi devote a substantial portion of their brief in support of their motion to dismiss discussing the Settlement Agreements.  *See* Defs. Byung Choi and Pyoung Choi's MTD Mem. at 2–5.  Indeed, aside from identifying the payroll records they entered as exhibits with their motion, Defendants Byung Choi and Pyoung Choi spend only six sentences explaining why, apart from the Settlement Agreements, the plaintiffs' claims should be dismissed.  *See id.* at 4–6.  At the August 6, 2014 hearing, however, counsel to these two defendants stated "frankly, from my clients' perspective, this case isn't really about the Settlement Agreement . . . because the Settlement Agreement was effective as of October 31, 2007," which is the date on which Defendants Byung Choi and Pyoung Choi's ownership interest in the supermarket ceased.  Hr'g Tr. 4:21-25.  Indeed, the Settlement Agreements, by their terms, purport to release from and waive claims against only E&C Foods, Inc., the corporation operated by Defendants Kwan Choi and Eun, and successors and owners of that

corporation, not predecessor owners. *See, e.g.*, Sarceno Agreement at 3–4. Thus, even if the Settlement Agreements were enforceable, Defendants Byung Choi and Pyoung Choi were not parties to the Settlement Agreements and suit against them would not be barred.

In view of the unavailability of the Settlement Agreements as a basis for defeating the plaintiffs' claims against Defendants Byung Choi and Pyoung Choi, at the motions hearing, counsel to these two defendants clarified that, rather than relying on the releases in the Settlement Agreements, these defendants relied on the submitted payroll records for Plaintiffs Sarceno, Godoy, and Iraheta. *See* Hr'g Tr. 9:14-24. According to these two defendants, these payroll records constituted "clear evidence of the time and dates that [Plaintiffs Sarceno, Godoy, and Iraheta] worked and that they were paid overtime when it was appropriate," thus entitling Defendants Byung Choi and Pyoung Choi to summary judgment as to these plaintiffs' claims. *See* Hr'g Tr. 9:16-23. Defendants Byung Choi and Pyoung Choi further assert that, due to the absence of any payroll records for Plaintiffs Vasquez and Flores, these plaintiffs have failed to plead adequately the factual predicate for a FLSA claim. *See id.* at 9:14–24. This argument, which ignores any counter averments from the plaintiffs, is unavailing.

The accuracy of the payroll records submitted by these two defendants is in dispute, since the plaintiffs dispute both the number of hours they worked for the defendants during the specified period of employment, as well as the amount they were paid, averring that they were paid in check and cash. *See* Hr'g Tr. 11:5–11; Compl. ¶¶ 35, 42, 49, 56, 63. The disputed payroll records, for instance, purport to show that Plaintiff Sarceno worked exactly forty hours of regular time and two hours of overtime for every week recorded in 2006,[4] *see* Defs.' Byung Choi and Pyoung Choi's Mot. Dismiss Ex. 1, ECF No. 15-2, and the same remarkably consistent

---

[4] The records contain no entries for the period between February 8, 2006 and March 29, 2006. *See* Defs. Byung Choi and Pyoung Choi's Mot. Dismiss Ex. 1 at 3–4.

attendance in 2007, with Plaintiff Sarceno working forty hours of regular time and two hours of overtime every week until the end of August, when Plaintiff Sarceno apparently stopped working the two hours of overtime he had worked for the previous eighteen months. *See id.* at 17. The disputed payroll records for Plaintiffs Godoy and Iraheta show the same unwavering consistency, with each plaintiff working exactly twenty-five hours during every pay period in 2007, with no overtime. *See* Defs.' Mot. Dismiss Ex. 2, ECF No. 15-2 (showing checks issued to Plaintiff Godoy for hours worked); Ex. 3, ECF No. 15-3 (showing checks issued to Plaintiff Iraheta for hours worked). Contrary to the consistent number of hours and payments reflected in these records, the plaintiffs assert in their affidavits that they were "paid a weekly salary, though [they] regularly worked more than 40 hours per week." Sarceno Aff. ¶ 4; *see also* Pls.' Opp'n Ex. 3 (Affidavit of Pl. Rudy Godoy ("Godoy Aff.")) ¶ 4, ECF No. 20-3 ("I was paid a weekly salary, though I often worked more than 40 hours per week."); Pls.' Opp'n Ex. 4 (Affidavit of Pl. Miguel Angel Iraheta ("Iraheta Aff.")) ¶ 4, ECF No. 20-4 (same). The accuracy of these records is, thus, a material fact in dispute that precludes summary judgment.

As for Plaintiffs Vasquez and Flores, the plaintiffs' complaint states that both plaintiffs worked at Best Way Supermarket in 2007—during which year Defendants Byung Choi and Pyoung Choi owned the business for ten of twelve months. *See* Compl. ¶¶ 48(a), 55(a); SMF ¶¶ 2, 8 (admitting Defendants Byung Choi and Pyoung Choi operated Best Way Supermarket from 2005 through November 2007). Both plaintiffs allege that they were paid in cash. Compl. ¶¶ 49, 56. Considering the payroll records submitted by Defendants Byung Choi and Pyoung Choi are actually records of paychecks issued, not records of time worked, *see* Defs. Byung Choi and Pyoung Choi's Mot. Dismiss Exs. 1–3, the absence of payroll records for Plaintiffs Vasquez and Flores could support an inference corroborating the plaintiffs' assertion that they were not paid

14

by check.  In any event, whether Plaintiffs Vasquez and Flores worked for Defendants Byung Choi and Pyoung Choi is a material fact in dispute that precludes summary judgment.

Since disputes of material fact exist as to the accuracy of Defendants Byung Choi and Pyoung Choi's payroll records and whether Plaintiffs Vasquez and Flores were employed by these defendants, Defendants Byung Choi and Pyoung Choi's motion to dismiss, converted to a motion for summary judgment, is denied.

### B.    THE SETTLEMENT AGREEMENTS DO NOT BAR THE INSTANT SUIT

Defendants Kwan Choi and Eun's Partial Motion for Summary Judgment is predicated on a single argument: that the instant suit is barred by the Settlement Agreements.  *See* Defs. Kwan Choi and Eun's PMSJ Mem. at 2 ("[T]he Plaintiffs and E & C Foods executed separate Settlement Agreements and Releases . . . resolving all claims that the Plaintiffs had for alleged unpaid wages.").  While settlements between parties are expressly contemplated by Federal Rule of Civil Procedure 41, settlements of wage and hour disputes subject to the FLSA are different, since the FLSA's "provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement."  *See Duprey v. Scotts Co. LLC*, No. PWG-13-3496, 2014 WL 2174751, at *2 (D. Md. May 23, 2014).  As this Court noted in *Carrillo v. Dandan Inc.*, No. 13-671, 2014 WL 2890309, at *3 (D.D.C. June 26, 2014), the FLSA's "protections for employees trump any purported settlement or waiver of the employees' right to bring suit for FLSA violations" unless there is a "bona fide dispute over wages or damages owed."[5]  Thus, contrary to the defendants' assertions, *see* Defs. Kwan Choi and Eun's PMSJ Mem. at 7–8, typical tenets of contract law do not apply to FLSA settlements.  *See, e.g.*, *Beard v. D.C. Hous.*

---

[5] This Court issued its ruling in *Carrillo* after the defendants' motions for summary judgment and to dismiss were fully briefed.  The parties were provided an opportunity to submit supplemental briefing, *see* Minute Order, June 26, 2014, and Defendants Kwan Choi and Eun and the plaintiffs filed supplemental briefs addressing the applicability of *Carrillo* to the instant matter.  *See generally* Defs.' Kwan Choi and Eun's Suppl. Mem. ("Defs. Kwan Choi and Eun's Suppl. Mem."), ECF No. 24; Pls.' Suppl. Mem., ECF No. 25.

*Auth.*, 584 F. Supp. 2d 139, 142 (D.D.C. 2008) (holding that traditional contract principle of accord and satisfaction does not apply to FLSA settlements). Thus, the Court first considers the circumstances under which a privately-arranged FLSA settlement reached without U.S. Department of Labor or judicial supervision is enforceable before determining whether the Settlement Agreements at issue here shield defendants Kwan Choi and Eun from any further liability on the plaintiffs' FLSA claims.

### 1. *Enforceability Of Privately-Arranged FLSA Settlement Agreements*

The D.C. Circuit has not opined on whether judicial approval of a privately-arranged FLSA settlement is required before such an agreement may be enforced. *See Beard,* 584 F. Supp. 2d at 142. Hence, any FLSA settlement that is not approved by a court "leaves the parties in an uncertain position . . . [since] the private settlement may be held unenforceable if the employer attempts to enforce the employees' waiver of claims per the settlement at a later date." *Carrillo,* 2014 WL 2890309, at *5. In this matter, the defendants did not seek a court's imprimatur before entering into the purported settlements and, therefore, assumed the risk of a subsequent judicial finding that the Settlement Agreements were unenforceable. *See id.*

In a seminal decision, *Lynn's Food Stores, Inc. v. United State Department of Labor* (*Lynn's Food*), 679 F.2d 1350, 1353 (11th Cir. 1982), the Eleventh Circuit illuminated this risk by stating unequivocally that, aside from a Department of Labor supervised settlement, "[t]he only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer," that can be "present[ed] to the district court [for] a proposed settlement, [and] the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." The court's holding in *Lynn's Food*, and the policy underlying that holding, are of particular relevance to this action, especially since the circumstances surrounding the purported settlements in that case are quite similar to the circumstances in this matter.

In *Lynn's Food*, an employer sought a declaratory judgment that the private settlements it had entered into with its employees absolved it of any future liability under the FLSA. *Id.* at 1351–52. Prior to the purported settlement agreements at issue in *Lynn's Food*, the United States Department of Labor had determined that the employer "was liable to its employees for back wages and liquidated damages." *Id.* at 1352. The employer subsequently convinced fourteen employees to execute settlement agreements under which they were paid substantially less than the Department of Labor had determined the employees were owed. *Id.* The Eleventh Circuit held that such settlements were not enforceable. *Id.*

In examining the history and purpose of the FLSA, the *Lynn's Food* court noted that "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981)). Thus, outside of payments supervised by the Department of Labor, the *Lynn's Food* court held that where settlement "agreements were not entered as a stipulated judgment in an action brought against [the employer] by its employees, the agreements cannot be approved under existing case law." *Id.* at 1353.

The Eleventh Circuit explained the rationale behind such a restriction as ensuring fundamental fairness in the process. *See id.* at 1354. "Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* The court noted that when employees are represented by counsel, "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* It concluded that "to approve an 'agreement' between an

employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA." *Id.*

The *Lynn's Food* court went on to describe the "agreements" and the circumstances of their execution in that case as "a virtual catalog of the sort of practices which the FLSA was intended to prohibit." *Id.* Among these practices were the employer's representative "insinuat[ing] that the employees were not really entitled to any back wages," and suggesting "that only malcontents would accept back wages owed them under the FLSA." *Id.* The employees in *Lynn's Food* "had not brought suit against Lynn's for back wages" and "seemed unaware that the Department of Labor had determined that Lynn's owed them back wages under the FLSA, or that they had any rights at all under the statute." *Id.* In that case, there was "no evidence that any of the employees consulted an attorney before signing the agreements," and "[s]ome of the employees who signed the agreement could not speak English." *Id.* The Eleventh Circuit concluded by noting that these practices were "illustrative of the many harms which occur when employers are allowed to 'bargain' with their employees over minimum wages and overtime compensation, and convinces us of the necessity of a rule to prohibit such invidious practices." *Id.*

Defendants Kwan Choi and Eun attempt to distinguish *Lynn's Food* by stating that the instant matter did not involve "circumstances where [the plaintiffs] were unaware that they were owed wages, could not speak English and the settlement agreements were not translated, did not consult an attorney before signing the agreements, and were discouraged from taking the money offered by their employer." Defs. Kwan Choi and Eun's PMSJ Reply at 7. These defendants, to put it bluntly, are missing the point of *Lynn's Food*. The Eleventh Circuit found settlement agreements entered into after a suit had been filed were potentially enforceable because such

agreements were subject to the crucible of the adversarial system. *See Lynn's Food*, 679 F.2d at 1354. When a suit is argued in the "adversarial context," and the employees are "represented by an attorney who can protect their rights under the statute," any settlement is likely to "reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." *Id.* In those circumstances, the Eleventh Circuit held, a "district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

In addition to attempting to distinguish *Lynn's Food*, Defendants Kwan Choi and Eun rely on three cases from outside this Circuit for the proposition that judicial imprimatur is not necessary for enforcement of a private FLSA settlement and that the instant Settlement Agreements should be enforced. *See* Defs. Kwan Choi and Eun's PMSJ Mem. at 8–10. Specifically, the Fifth Circuit in *Martin v. Spring Break '83 Productions,* 688 F.3d 247, 257 (5th Cir. 2012), the Eastern District of New York in *Picerni v. Bilingual Seit and Preschool Inc*., 925 F. Supp. 2d 368, 378 (E.D.N.Y 2013), and the Western District of Texas in *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 631–32 (W.D. Tex. 2005), concluded that enforcement of the private FLSA settlements at issue in those cases was proper. As this Court noted in *Carrillo*, the law in this Circuit remains unsettled as to whether even a judicially approved settlement is enforceable, but such judicial approval "would be a significant factor militating in favor of subsequent enforcement." *See Carrillo*, 2014 WL 2890309, at \*5. In *Martin* and *Martinez*, the courts carefully scrutinized the terms of the agreements at issue to ensure that the settlements were fair and did not undermine the goals of the FLSA. *See Martin*, 688 F.3d at 256 n.10 (holding private settlement agreements reached in the context of a civil lawsuit did "not implicate[] . . . the concerns that the Eleventh Circuit expressed in *Lynn's*

*Food*"); *Martinez*, 361 F. Supp. 2d at 631–32 (holding private settlement agreement that resolved "bona fide dispute" and was not obtained under duress was "a valid release of Plaintiff's FLSA rights"). In *Picerni*, the court found that the FLSA was not exempt from Federal Rule of Civil Procedure 41 and, consequently, the court had no reason to examine a motion for voluntary dismissal under Rule 41(a) for fairness. *See Picerni*, 925 F. Supp. 2d at 375.

The Court concurs with the reasoning of the Fifth Circuit in *Martin* that a private settlement of FLSA claims may be enforceable, even if the settlement was reached without United States Department of Labor or judicial supervision or approval, but only when the agreement resolves a bona fide dispute between the parties and the terms of the settlement are fair and reasonable. *See Martin*, 688 F.3d at 255, 256 n.10. Whether a bona fide dispute exists is a critical legal conclusion, without which enforcement of a FLSA private settlement is precluded as a matter of law, since an employee may not waive his entitlement to minimum wage and overtime pay. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704, 707 (1945) (holding minimum wage, overtime, and entitlement to liquidated damages rights in FLSA are non-waivable in the absent of bona fide dispute); *Lynn's Food*, 679 F.2d at 1355 (holding "there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement . . . is a fair and reasonable resolution of a bona fide dispute over FLSA provisions."). Since material factual disputes exist as to whether a bona fide dispute existed at the time the Settlement Agreements were executed, summary judgment for Defendants Kwan Choi and Eun is precluded, as explained below. Moreover, while the parties dispute certain circumstances surrounding the execution of the Settlement Agreements, the facts that are undisputed establish, as a matter of law, that the Settlement Agreements are not enforceable.

## 2. *Factual Disputes Over Existence Of Bona Fide Dispute*

On the threshold issue, the existence of a bona fide dispute, Defendants Kwan Choi and Eun point to the provision in the agreements stating that a bona fide dispute exists "between the parties with respect to the total overtime hours worked and the claims of the Plaintiffs." SMF ¶ 28. This provision is simply not dispositive, however. The circumstances under which the agreements were executed raise significant questions about whether the plaintiffs knowingly, intelligently, and voluntarily signed the agreements, thereby waiving their FLSA rights. In particular, the parties do not dispute that the plaintiffs were given only short notice about the meetings where the agreements were first presented, discussed, and signed; the plaintiffs had no legal representation at the meetings; and the plaintiffs needed a translator at the meetings but only signed the English version of the agreements, rather than the version in their native language of Spanish.[6] These undisputed facts, standing alone, undercut any conclusion that the provision proclaiming the existence of the requisite bona fide dispute is effective and results in a waiver of FLSA rights.

Moreover, the parties dispute key facts necessary to make the determination that a bona fide dispute existed when the Settlement Agreements were signed. This conclusion may seem counter-intuitive in light of the plaintiffs' initiation of the instant lawsuit, but the current status of the plaintiffs' claims are not the measure of the existence of a bona fide dispute at the time they signed the agreements sought to be enforced. Rather, the pertinent timeframe for evaluating the agreements is at the time the settlements were reached.

---

[6] As noted, *see supra* note 2, the Spanish versions of each Settlement Agreement are essentially blank with only the English versions completed with the signatures of the parties and addresses to which any notices relating to the Settlement Agreements was to be sent.

Although the plaintiffs' instant claims challenging the legality of the wages they were paid during the same period covered by the purported agreements strongly suggests that the factual basis for a dispute was present at the time of the agreements, the plaintiffs aver that they were unaware of any dispute when they signed the agreements. *See, e.g.*, Sarceno Aff. ¶ 21 ("I never told the Defendants they owed me 'overtime' wages, and never spoke with the Defendants about receiving additional wages for the hours I worked over 40 hours in one week."); *id.* ¶ 22 ("I never asserted a claim for unpaid wages against any of the Defendants, or in any manner demanded that the Defendants pay me 'overtime' wages."); Godoy Aff. ¶¶ 21–22 (making virtually identical statements to those in Sarceno Aff.). According to the plaintiffs, until they were presented with the Settlement Agreements, they believed that their salaries covered all of the compensation to which they were entitled. *See, e.g.*, Godoy Aff. ¶ 20 ("I had always been a salaried employee and prior to [October 20, 2011], I did not know that my employers owed me additional wages for the hours I worked over 40 hours in one week.").

No "bona fide dispute" under the FLSA can exist when one party to the dispute is unaware of the dispute due to ignorance over his or her legal rights. Defendants Kwan Choi and Eun counter that the plaintiffs were aware of the FLSA dispute because "Mr. Eun and Mr. Choi, through [their attorney] Ms. Chung and a Spanish interpreter, explained in detail what the *Munoz* case entailed and the purpose and reasoning for the Settlement Agreements." Defs.' Kwan Choi and Eun's PMSJ Reply at 7. They also assert that "[t]he Plaintiffs were not forced to execute the Settlement Agreements . . . ." *Id.* at 8. The plaintiffs, on the other hand, deny that they were told about the *Munoz* suit and attest that they were unaware of their rights under the FLSA at the time they were presented with the Settlement Agreements. *See, e.g.*, Sarceno Aff. ¶ 20; Godoy Aff. ¶ 20; Iraheta Aff. ¶ 20.

When, as here, a court is faced with two diametrically opposed versions of what happened at a critical meeting, the issue of which version is correct turns on a question of credibility that is inappropriate to resolve on a summary judgment motion. *See Primas v. District of Columbia*, 719 F.3d 693, 698 (D.C. Cir. 2013) (holding that where answer to question of fact "hinges on credibility determinations more appropriately made from a jury's box than a judge's bench," summary judgment is inappropriate); *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010) ("'Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge' at summary judgment" (quoting *Anderson*, 477 U.S. at 255)). On this ground alone, the defendants' motions must be denied.

Moreover, as discussed next, other circumstances surrounding the execution of the Settlement Agreements raise concerns about the fairness and reasonableness of the process employed to reach, and the terms reflected in, the agreements.

### 3. *Fairness and Reasonableness of The Settlement Agreements*

Even assuming, *arguendo*, that the defendants are correct that a bona fide dispute between the parties existed at the time of executing the settlement agreements, consideration of the totality of the circumstances surrounding the execution of the Settlement Agreements demonstrates that, while certain circumstances are disputed and therefore preclude summary judgment, other undisputed aspects of the agreements, including their terms and timing, make clear that they are unenforceable as a matter of law. The totality of circumstances approach examines three primary aspects of the agreements to evaluate their fairness and reasonableness: (1) whether the employer is "overreaching" to secure a waiver of rights; (2) whether the settlement was reached by arms' length negotiation; and (3) whether the plaintiffs would have

difficulty obtaining a judgment.  *See Carrillo*, 2014 WL 2890309, at *6.  Each of these factors is reviewed below.

a)  *Overreaching By Employer*

The circumstances surrounding these Settlement Agreements raise significant concern about "overreaching" by the employer.  Indeed, this case bears a striking resemblance to the troubling facts presented in *Lynn's Food*, where the Eleventh Circuit found unenforceable a private FLSA settlement agreement.  *See* 679 F.2d at 1355.  Among the salient similarities between this case and *Lynn's Food* are the following three factual circumstances, which preclude the entry of summary judgment for Defendants Kwan Choi and Eun because, at a minimum, they are disputed by the parties:  First, in *Lynn's Food*, "the employees seemed unaware that the Department of Labor had determined that Lynn's owed them back wages under the FLSA, or that they had any rights at all under the statute."  679 F.2d at 1354.  In the instant matter, the plaintiffs likewise aver that they "did not know that [their] employers owed [them] additional wages for the hours [they] worked over 40 hours in one week."  Sarceno Aff. ¶ 20.

Second, in *Lynn's Food*, there was "no evidence that any of the employees consulted an attorney before signing the agreements."  679 F.2d at 1354.  In this matter, it is undisputed that the "Plaintiffs did not have an attorney present with them at the time they reviewed and signed the settlement agreement and release."  SMF ¶ 26.  At the motions hearing, however, Defendants Kwan Choi and Eun declined to concede that the plaintiffs had not consulted with counsel before the meeting where they signed the Settlement Agreements.  Hr'g Tr. 13:1-6 (stating through counsel that Defendants Kwan Choi and Eun had no information that plaintiffs were not represented by counsel at time agreements were signed).  Moreover, Defendants Kwan Choi and Eun state the plaintiffs "were instructed they did not have to sign the Settlement Agreements and

24

that they could consult an attorney or have an attorney review the Settlement Agreements," Defs. Kwan Choi and Eun's PMSJ Reply at 7–8, but this assertion is disputed by the plaintiffs, who deny that they were informed they could seek legal counsel, *see, e.g.*, Sarceno Aff. ¶ 13.

Finally, in *Lynn's Food*, "some of the employees who signed the agreement could not speak English." 679 F.2d at 1354. The same is indisputably true here. Indeed, the defendants were fully cognizant of the plaintiffs' difficulty with English as reflected by the presence of a translator at the Virginia meetings.

Just as in *Lynn's Food*, the circumstances under which these Settlement Agreements were signed are "illustrative of the many harms which may occur when employers are allowed to 'bargain' with their employees over minimum wages and overtime compensation."[7] Drawing all reasonable inferences in favor of the plaintiffs, the material factual disputes raised by these circumstances preclude summary judgment for Defendants Kwan and Eun.

While consideration of the disputed facts surrounding the execution of the Settlement Agreements militates against the grant of summary judgment, significantly, the undisputed terms of the Settlement Agreements themselves demonstrate over-reaching by the employer by revealing the extent to which the fairness of the settlement process was compromised and the unreasonableness of the settlement terms. First, the Settlement Agreements offer very little compensation when compared to the amount of overtime hours claimed, a hallmark of employer overreaching. *See Lynn's Food*, 679 F.2d at 1354 (finding settlement that paid employees substantially less than what they were owed under the FLSA was example of employer overreaching). For example, the Settlement Agreement and Release signed by Plaintiff Sarceno

---

[7] By comparison, the facts in *Lynn's Food* are slightly more favorable to the employer than the set of facts presented here: the employer in *Lynn's Food* recorded the so-called negotiations with the employees so that the parties could know what was said without resorting to the "he said, she said" situation confronting the Court here. *See Lynn's Food*, 679 F.2d at 1354.

states that "the Employee claims to have worked a total of 4,541 overtime hours during the Employment Period, and that total additional wages for overtime compensation is claimed by Employee in the amount of $8,508.93." Sarceno Agreement at 1. This single sentence reflects a fundamental term of the agreements that underscores the breadth of the employer's overreach and the unfairness of the purported Settlement Agreements.

Applying simple arithmetic to this term of Plaintiff Sarceno's Settlement Agreement, as an example, shows that for his "total of 4,541 overtime hours," he received a settlement of only $8,508.93 for the "total additional wages for overtime compensation." *See* Sarceno Agreement at 1. As the plaintiffs point out, if this is correct, the plaintiff claimed only a woefully low amount of $1.87 per hour in additional wages, even assuming that every overtime hour had already been compensated at regular time – an assumption the plaintiffs dispute.

Moreover, if Plaintiff Sarceno actually worked the 4,541 overtime hours and received his regular pay for those hours, he would have been owed approximately $3.50 an hour for each of those overtime hours. Thus, the settlement payment only accounted for approximately 2,431 overtime hours. *See* Sarceno Agreement at 1 (requiring additional payment of $8,508.93, which, when divided by $3.50 an hour, equals 2,431 hours). This would mean the Settlement Agreement for Sarceno reflects a compromise involving the write-off of over 2,000 hours, for which Plaintiff Sarceno ostensibly claimed entitlement to overtime pay. Thus, any mathematical analysis of this key term in the Settlement Agreements undercuts a finding that the settlement payments were fair and reasonable.

Defendants Kwan Choi and Eun attempt to deflect the import of applying simple arithmetic to the Settlement Agreement terms by explaining that "the hours set forth in the Settlement Agreement have no relevance and cannot be used to determine [the employees']

hourly rates of pay," because "the hours worked and those claimed by the Plaintiffs in the Settlement Agreements were disputed."  Defs. Kwan Choi and Eun's PMSJ Reply at 4 n.1.  Contrary to Defendants Kwan Choi and Eun's assertion, however, the hours set forth in the Settlement Agreement are certainly relevant, since an employee *must* receive minimum wage and overtime for every hour worked and the employee *cannot waive* his entitlement to those wages.  *See Barrentine*, 450 U.S. at 740 ("This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the [FLSA].").

     In *Carrillo*, this Court found that a FLSA settlement payment was fair and reasonable where the compromise amount was reached after taking into account an "appropriate investigation of the claims and defenses available to the [p]arties," and was an amount that fell "slightly more toward the plaintiffs' end of [the] spectrum of potential damages calculations," after consideration of the number of uncompensated hours claimed and the detailed explanations of disputes over "the accuracy of the plaintiffs' time slips," "whether travel between work sites during the work day was reasonably compensable," and whether the employees were "advanced" any money from their wages.  *See Carrillo*, 2014 WL 2890309, at *7.  In contrast, the only "evidence" Defendants Kwan Choi and Eun present to justify the settlement payments in this case is Defendant Kwan Choi's affidavit stating the existence of "a bona fide dispute between E&C Foods and Sarceno, Godoy, Iraheta, Vasquez and Flores regarding the overtime they claimed to have worked and the compensation purportedly owed."  1st Kwan Choi Aff. ¶ 8.  Such a bare bones, legally conclusory statement is insufficient to establish the fairness and reasonableness of the payments provided in the Settlement Agreements, especially in light of the

detailed explanations the Court found acceptable in *Carrillo*.[8]  Furthermore, by contrast to the

settlement amount approved by this Court in *Carrillo*, the purported bargain reflected in the

Settlement Agreements here is so low compared to the claimed number of overtime hours that

the settlement clearly favors the defendants.

Indeed, the Court need look no further than the judicially-approved settlement decrees in

the *Munoz* suit to ascertain just how much the purported Settlement Agreements in this case

favored the defendants.  At the time the plaintiffs signed the Settlement Agreements at issue here

in October, 2011, the *Munoz* suit was ongoing, with approval of the settlement decrees in that

case occurring in December, 2011.  *See* Order at 1, No. 11-1416, ECF No. 19 (approving

settlement agreements in *Munoz* suit in December 2011).  Ultimately, the *Munoz* plaintiff,

Lavaro Hernandez, who is allegedly similarly situated to the plaintiffs in this suit, was paid

$47,131.00 to settle his outstanding claims for back overtime and minimum wages.  *See* E&C

Decree at 4 (stating Lazaro Hernandez was to be paid $32,607.00); Choi Decree at 3 (stating

Lazaro Hernandez was to be paid $14,524.00).  The settlement amounts approved by this Court

in the *Munoz* suit are more than five times the amount Plaintiff Sarceno received, *see* Sarceno

Agreement at 1; seven times the amount Plaintiff Vasquez received, *see* Vasquez Agreement at

1; nearly eight times the amount Plaintiff Godoy received, *see* Godoy Agreement at 1; nearly

three times the amount Plaintiff Flores received, *see* Flores Agreement at 1; and more than five

---

[8] The Court is cognizant that the actual number of overtime hours for which the plaintiffs may be owed wages may be difficult to determine since the Settlement Agreements state "that E&C Foods d[id] not maintain verified records of hours claimed to be worked by employees . . . ."  *See, e.g.,* Sarceno Agreement at 1.  Although the defendants make vague references to "discussions" with the plaintiffs "regarding the resolution of any claims that those individuals had for unpaid overtime compensation," 1st Kwan Choi Aff. ¶ 7, the language barrier between the plaintiffs, who speak Spanish and "have a limited understanding of spoken English," Sarceno Aff. ¶ 2, and Defendants Kwan Choi and Eun, who "have some difficulty speaking English" and do not speak Spanish, 2d Kwan Choi Aff. ¶ 2, makes it difficult to discern how the parties could have had the kind of complex, highly technical discussion necessary over employment records, hours worked, and any applicable overtime rates to arrive at the number of overtime hours claimed.  *See* Hr'g Tr. 28:24–29:2 (plaintiffs' counsel stated "There's no indication how any of those numbers, how any of those discussions ever could have taken place.  Not only . . . did [they] not take place, [they] couldn't have taken place" due to language differences.).

times the amount Plaintiff Iraheta received, *see* Iraheta Agreement at 1. The fact that an

allegedly similarly situated worker was paid, through a judicially approved settlement negotiated

between counsel, at least three times the amount the instant plaintiffs were paid at generally the

same time, militates strongly against a finding that the instant Settlement Agreements were fair

and reasonable.

Another provision of the Settlement Agreements also reflects employer over-reaching

and militates against enforcement. Specifically, these Agreements contain a confidentiality

clause to bar the plaintiffs from discussing the Agreements or their terms with anyone. *See, e.g.*,

Sarceno Agreement at 3 ("THE FACT OF THIS AGREEMENT AND THE PAYMENT

HEREUNDER SHALL, TO THE MAXIMUM EXTENT PERMITTED BY LAW, REMAIN

CONFIDENTIAL AND SHALL NOT BE DISCLOSED TO ANYONE . . .") (capitalization in

original). Other courts have found that such a confidentiality clause, in and of itself, renders a

FLSA settlement unenforceable, since it "(1) empowers an employer to retaliate against an

employee for exercising FLSA rights, (2) effects a judicial confiscation of the employee's right

to be free from retaliation for asserting FLSA rights, and (3) transfers to the wronged employee a

duty to pay his fellow employees for the FLSA wages unlawfully withheld by the employer."

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010).

The confidentiality clause in the Settlement Agreements is even more problematic in

view of the ongoing *Munoz* suit at the time the instant Settlement Agreements were signed, and

the fact that the plaintiffs here were paid substantially less than what their similarly situated co-

workers in the *Munoz* suit would receive less than two months later. In this context, the "gag"

requirement imposed on the plaintiffs by the confidentiality clause strongly suggests that it was

designed to prevent the plaintiffs in the instant matter from speaking to the *Munoz* suit plaintiffs

and comparing notes. Indeed, the plaintiffs aver that the confidentiality clause was of particular importance to Defendant Kwan Choi, who allegedly told them "that if we spoke with anybody about the Settlement Agreement and Release, 'You will have problems.'" Sarceno Aff. ¶ 15. These restrictions on the plaintiffs' ability to exercise fully their rights under the FLSA are exactly what the court in *Dees* was concerned with when it found such a clause, standing alone, renders a purported FLSA settlement unenforceable. *See Dees*, 706 F. Supp. 2d at 1242.

b)      *Absence Of Arms' Length Negotiations*

As for the second, related factor—the presence or absence of arms' length negotiation—Defendants Kwan Choi and Eun disingenuously argue that this consideration favors the defendants. Defs. Kwan Choi and Eun's Suppl. Mem. at 8. The hallmarks of an "arms' length negotiation" involve parties with similar access to counsel after meaningful discovery and the absence of duress or coercion. *See Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 554 (2008) (noting presence of fraud and duress precludes "fair, arms-length negotiations"); *Wal-Mart Stores v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting "presumption of fairness" applies when negotiation conducted by counsel after discovery); *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) ("[C]ourts typically regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.") (internal quotation marks and citation omitted). The defendants discount the undisputed fact that the plaintiffs were not represented by counsel at the meeting when the Settlement Agreements were signed, noting that "the plaintiffs were notified of their rights to seek and retain private counsel" and "were informed that they could take the Settlement Agreements home to review prior to execution." *See* Defs. Kwan Choi and Eun's Suppl. Mem.

at 8. According to Defendants Kwan Choi and Eun, this means the Settlement Agreements were "privately negotiated . . . at arms-length." *Id.*

Yet, Defendants Kwan Choi and Eun's counsel states that she prepared the Settlement Agreements herself without ever having spoken to the plaintiffs in this matter, *see* Chung Aff. ¶¶ 8, 12, 18, and the documents themselves reveal that the only changes made to the Settlement Agreements before they were signed by the plaintiffs at the October 20 and 21, 2011 meetings was to correct their names, *see* Sarceno Agreement at 1; Flores Agreement at 1, and to write in the addresses at which notices regarding the Settlement Agreements should be sent, *see* Sarceno Agreement at 4; Vasquez Agreement at 4; Godoy Agreement at 4; Flores Agreement at 4; Iraheta Agreement at 4.

The plaintiffs' lack of legal representation only compounds their unequal bargaining positions, undermining any finding that the Settlement Agreements resulted from arms' length negotiations. The Eleventh Circuit in *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013), recently highlighted the particularly vulnerable status of, and implicitly coercive situation for, employees negotiating FLSA settlements with their then-current employers. The *Nall* court noted that the "most cause for concern exists when the plaintiff employee is still working for the defendant employer" since "the possibility of retaliation may pervade the negotiations." *Id.* at 1307. While in *Nall*, the plaintiff "no longer worked for [the employer] when she negotiated [her] settlement agreement," *id.*, the opposite is true here: to the extent the plaintiffs can be said to have "negotiated" at all during the October 20 and 21, 2011 meetings, they were still employed by the defendants. In evaluating the voluntariness of the plaintiffs' execution of the agreements, the Court cannot be blind to the potential risks they faced to their continuing employment were they to reject their employer's Settlement Agreements upon presentation.

Thus, this second factor—whether the settlement was reached by arms' length negotiation—clearly favors the plaintiffs.

c)      *Difficulty Of Securing A Judgment*

The final factor – the difficulty of securing a judgment – also favors the plaintiffs. Defendants Kwan Choi and Eun contend this factor favors them because "the Plaintiffs would have great difficulty obtaining and collecting upon a judgment in this case," since E&C Foods is no longer a going concern. Defs. Kwan Choi and Eun's Suppl. Mem. at 9. The defendants have incorrectly applied this factor to current circumstances rather than the circumstances that existed at the time of execution of the purported Settlement Agreements. The plaintiffs, on the other hand, argue that this factor should be examined based on the *status quo* when the Agreements were signed, noting that at that time, since the plaintiffs had not filed a lawsuit—a fact about which there is no dispute—"there was no need for the parties to address whether post-judgment collections would be an issue." Pls.' Suppl. Mem. at 12. The plaintiffs have the better of this argument.

In evaluating the fairness and reasonableness of the purported Settlement Agreements, whether the plaintiffs could collect on a judgment now, after a period of intervening years, is irrelevant. Rather, the Settlement Agreements must be examined in light of the circumstances as they existed at the time the Agreements were signed, since, had the defendants sought judicial imprimatur of the Agreements *ex ante*, a court would have evaluated the facts as they were known at the time the agreements were signed. This is the same process this Court engaged in with respect to the proposed settlement in *Carrillo*, 2014 WL 2890309, at *7–8.

At the time these purported Settlement Agreements were signed, E&C Foods was a going concern and, in fact, the plaintiffs were told they could cash their settlement checks at the store.

*See* Sarceno Aff. ¶¶ 18–19.  The plaintiffs could not have engaged in a fair and reasonable evaluation of the potential pitfalls of litigation since, at the time, the plaintiffs had filed no lawsuit and they were not accompanied by counsel when they were presented with the agreements and signed them.  *See* SMF ¶¶ 26, 31.  This final factor favors the plaintiffs.

*        *        *

In sum, the undisputed facts here – that (1) the plaintiffs were still employed by Defendants Kwan Choi and Eun when the Settlement Agreements were signed; (2) the plaintiffs had no counsel present at the signing of the Settlement Agreements; (3) the plaintiffs signed the Settlement Agreements at the same meeting when the agreements were presented, after only a limited opportunity for review; (4) the plaintiffs' understanding of English was limited, regardless of whether translations of the documents were provided; (5) the plaintiffs could have joined the *Munoz* suit as similarly situated employees but for the Settlement Agreements; (6) the settlement amounts paid to the instant plaintiffs were significantly less than that paid to their allegedly similarly situated co-worker, whose settlement was negotiated by counsel and judicially-approved; (7) the Settlement Agreements were drafted entirely by Defendants Kwan Choi and Eun's counsel with no input from the plaintiffs; and (8) the Settlement Agreements barred the instant plaintiffs from discussing the fact or terms of the agreements with their co-workers – are sufficient to show that the employer overreached in obtaining the plaintiffs' signatures to the Settlement Agreements.  These undisputed facts, coupled with other undisputed facts indicating that these Settlement Agreements were not negotiated at arms' length and that, at the time the Settlement Agreements were signed, there was no obstacle to the plaintiffs ability to collect on a judgment obtained, since the *Munoz* plaintiffs were able to collect, compel the conclusion that the Settlement Agreements may not be enforced.

**IV. CONCLUSION**

For the foregoing reasons, genuine issues of material fact are present that preclude granting Defendants Pyoung Choi and Byung Choi's Motion to Dismiss, ECF No. 15, which has been converted to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). In addition, the purported Settlement Agreements releasing the plaintiffs' claims under the FLSA are not enforceable and do not bar the plaintiffs' instant action against Defendants Kwan Choi and Eun. Accordingly, Defendants Kwan Choi and Eun's Motion for Partial Summary Judgment, ECF No. 17, is denied. The Order consistent with this Memorandum Opinion was entered on August 6, 2014. *See* Minute Order, August 6, 2014.

Date: September 5, 2014

_____
BERYL A. HOWELL
United States District Judge